A. Cuesta & Cía., Sucrs., S. en C., demandante y apelada, *v.* Rafael Sancho Bonet, Tesorero de Puerto Rico, demandado y apelante.

Núm. 7814.—*Sometido:* Noviembre 21, 1938. *Resuelto:* Enero 19, 1939.

*Hon. Procurador General B. Fernández García, Emilio de Aldrey, Procurador General Auxiliar y R. García Cintrón, Subprocurador,* abogados del apelante; *D. Guerrero Noble,* abogado de la apelada.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

El Tesorero de Puerto Rico apela de una sentencia adversa dictada en un pleito instado ante la corte de distrito sobre devolución de arbitrios pagados bajo protesta. No existe cuestión alguna sobre el derecho de la demandante al cobro de las mismas. Tampoco se planteó cuestión jurisdiccional en la corte de distrito. La suma envuelta era menos de $500. El tesorero solicita ahora la revocación fundándose en que la corte de distrito carecía de jurisdicción.

En *Jesús* v. *Gallardo,* 34 D.P.R. 430, este tribunal, interpretando la Ley núm. 9 de 1924 (sesión extraordinaria de ese año, pág. 71), resolvió, conforme se desprende del sumario, lo siguiente:

"La jurisdicción de los tribunales en casos de reclamaciones para obtener la devolución de contribuciones pagadas bajo protesta se determina por razón de la cuantía envuelta."

Ocho años más tarde, en *Soto Gras* v. *Domenech, Tesorero,* 45 D.P.R. 940, se resolvió que las cortes de distrito tienen jurisdicción exclusiva de los pleitos sobre devolución de contribuciones pagadas bajo protesta, irrespectivamente de la cuantía en controversia. El caso de *Jesús* v. *Gallardo,* supra, fué revocado expresamente.

En *The Shell Co. (P. R.) Ltd.* v. *Pagán, Tesorero,* 51 D. P.R. 208, se distinguió y desacreditó el caso de Soto Gras, mas no. se le revocó expresamente. Un año más tarde, en *Serrallés* v. *Sancho Bonet, Tesorero,* 53 D.P.R. 650, este tribunal revocó definitivamente el caso de Soto Gras y una vez más declaró que la ley era la que esta misma corte había declarado previamente en el de *Jesús* v. *Gallardo,* supra.

En un caso reciente de Nueva York—*People ex rel Rice* v. *Graves,* 242 App. Div. 128, la corte dijo:

"El efecto que ha de dársele a la actuación de una corte de última instancia al revocarse a sí misma, es materia que ha dado lugar a fecunda litigación y que durante siglos ha servido de tema para discusión filosófica por parte de juristas y comentaristas. De la añeja discusión han surgido dos teorías fundamentalmente opuestas. De acuerdo con una de éstas las decisiones de los tribunales son siempre evidencia concluyente de lo que la ley es. Los seguidores de la otra teoría aseveran que las decisiones son prueba, mas no evidencia concluyente, de la ley. El Juez Cardozo, en sus conferencias intituladas 'Desarrollo del Derecho' en relación con esta materia dijo (págs. 31, 32): '¿Cuáles son los derechos de aquellos litigantes que han actuado a base de una sentencia de la corte de última instancia de un estado al efecto de que un estatuto es nulo, si viene ante la misma corte una controversia entre ellos luego de haber sido revocada la anterior sentencia? Será difícil llegar a la

solución de tal problema sin entregarse a una disertación filosófica sobre la naturaleza del derecho en general.' Citamos una vez más al eminente jurista (págs. 121, 122): 'Indudablemente existen muchas reglas de propiedad o de conducta que no pueden modificarse retroactivamente sin que se cometa una injusticia u opresión, y esto se hace ora sea ello correcto o incorrecto en su origen. Que yo sepa, ningún juez jamás piensa en cambiarlas. El cuadro presentado por el litigante perplejo que es inducido a entablar un recurso basado en la falsa luz arrojada por una decisión, tan sólo para encontrarse con la ruina cuando se extinga esa luz y la decisión es revocada, es en gran parte fantasía de cerebros excitados.''

"El deseo natural de que exista estabilidad en la ley dió origen a que se descansara en los casos ya resueltos aún allá para la época de Bracton y de los Anuarios del Siglo XIV. De conformidad con la doctrina ortodoxa de Blackstone, a la cual aún se adhieren por lo menos nominalmente la mayoría de las cortes, una decisión judicial es meramente evidencia de la ley, mas no la ley misma; y cuando una decisión es revocada no se convierte en ley espuria; nunca fué la ley, y la decisión desacreditada será considerada como si nunca hubiera sido tal y el pronunciamiento reconsiderado tenido como la ley desde el principio. A pesar de la desaprobación expresa de algunas cortes de reputación y de ciertos comentaristas eminentes, la doctrina prevaleciente no es al efecto de que la ley es modificada por la decisión revocadora, sino que la corte estuvo equivocada en su decisión anterior, y que la ley es, y siempre fué, la expuesta en la decisión posterior. Empero, debe decirse que muchos de los principales comentaristas de la jurisprudencia, ingleses y americanos, caracterizan esta teoría de derecho como una ficción infantil y propulsan la doctrina de que las reglas que los organismos judiciales del estado sientan al decidir los casos constituyen la ley. Sin embargo, de acuerdo con el gran peso de las autoridades, la teoría de que las cortes hacen leyes es incorrecta. Los tribunales no legislan, sino que simplemente declaran la ley. Una decisión judicial no es otra cosa que evidencia de la ley. Una decisión revocadora no modifica la ley sino que impugna la decisión revocada como evidencia de la ley. Al adoptar la teoría de que las cortes meramente declaran la ley preexistente, lógicamente se desprende que una decisión en que se revoca otra anterior opera retroactivamente. Las cortes de ordinario han dado efecto retroactivo a las decisiones que han revocado precedentes anteriores.

"Cuando fundada en una decisión anterior una persona ha adquirido derechos contractuales o de propiedad que son válidos

bajo la ley, tal cual había sido declarada por el tribunal más alto del estado, o ha hecho algo que según dicha ley la convierte en un actor inocente, el resultado lógico de esa doctrina con frecuencia resultaría cruel e injusto. Cuando al confrontarse con esta situación la gran mayoría de los tribunales, al ser llamados a hacer justicia, se han negado a aplicar la doctrina en toda su plenitud y han resuelto que aunque por lo general la modificación de una decisión judicial tiene efecto retroactivo, ellos no le darían tal efecto para no menoscabar así derechos adquiridos, como los derechos de propiedad o los derechos contractuales. La Corte Suprema de los Estados Unidos en el caso de *Great Northern R. Co.* v. *Sunburst Co.*, 287 U. S. 358, por voz del Juez Asociado Sr. Cardozo, dijo: 'Al definir los límites dentro de los cuales se adhiere a los precedentes, el estado puede optar por darles efecto prospectivo o retroactivo. Puede decir que las decisiones de su más alto tribunal, aunque luego sean revocadas, son no obstante ley para transacciones intermedias. En realidad, hay casos que indican con demasiada amplitud (cf. *Tidal Oil Co.* v. *Flanagan*, 263 U. S. 444), que debe dárseles tal efecto; mas nunca se ha expresado duda al efecto de que debe considerárseles así si con ello se evita cometerse una injusticia o una crueldad.' Salmond en su obra sobre jurisprudencia (octava edición, pág. 197), al discutir el efecto retroactivo de una decisión posterior, dijo: 'La revocación de un precedente no equivale a la abolición de una regla establecida de derecho; es la negativa autorizada de que la supuesta regla de derecho jamás ha existido. El precedente es tratado así, no porque constituye ley espuria, sino porque nunca en realidad ha sido ley. No se ha ajustado a los requisitos de la eficacia legal. De ahí que la revocación de un precedente, contrario a la derogación de un estatuto, tenga efecto retroactivo; se resuelve que la decisión ha sido mala *ab initio*. Un estatuto derogado, por el contrario, continúa siendo válido y aplicable a aquellos asuntos que surgieron con anterioridad a la fecha de su derogación. La revocación de un precedente es análoga, no a la derogación de un estatuto, sino al rechazo judicial de una costumbre por irrazonable o por dejar de ajustarse a los requisitos de la ley consuetudinaria.'

"El efecto de revocar una decisión y de negarse a seguir el precedente allí establecido, es retrospectivo y se convierte en ley a partir de la fecha en que se dictó la decisión revocada tal cual se declara en la última, excepto en tanto en cuanto la interpretación últimamente dada menoscaba las obligaciones de los contratos ya

celebrados o afecta perjudicialmente derechos adquiridos de conformidad con la decisión anterior.   (15 C. J. 960, y casos allí citados.)

"El principio general es que la decisión de un tribunal de última instancia que revoca una decisión anterior es retroactiva, en su alcance, y el efecto no es que la anterior decisión es ley espuria sino que nunca ha sido ley.   A esta regla, las cortes han establecido la excepción de que cuando una ley constitucional o estatutaria ha recibido determinada interpretación por los tribunales de última instancia, y se han otorgado contratos y adquirido derechos bajo y de conformidad con tal interpretación, esos contratos no serán invalidados ni los derechos adquiridos a tenor de los mismos menoscabados mediante una interpretación modificada hecha en una decisión posterior."

A. Cuesta & Cía. inició este recurso en julio de 1936.   En marzo de 1938 se aceptaron en una estipulación los hechos esenciales de la demanda.   Ésta fué seguida en mayo por una moción en la cual el demandado suscitaba ciertas cuestiones de derecho.   La corte de distrito dictó sentencia el 25 de mayo.   El caso de Serrallés fué resuelto por este tribunal el 28 de julio de 1938.

La ley declarada en el caso de Soto Gras—si es que aceptamos la teoría ortodoxa discutida en el caso de *People ex rel Rice* v. *Graves,* supra—"tenía una existencia platónica o ideal antes del acto de la declaración." *Great Northern R. Co.* v. *Sunburst Oil & Ref. Co.,* supra.   Según esa teoría—caracterizada en el caso de Sunburst Oil & Ref. Co. como un "antiguo dogma"—la ley declarada por este tribunal en *Jesús* v. *Gallardo,* luego de revocarse ese caso por este tribunal en el de Soto Gras, no se convirtió en ley espuria; "nunca fué ley."   Sin embargo, por igual fundamento, la doctrina del caso de Soto Gras—al ser revocada por el de Serrallés—tampoco se convirtió en ley espuria; "nunca fué ley."   No nos detendremos a especular sobre la naturaleza exacta del resultado neto cuando, como ocurre en el presente caso, una corte en dos ocasiones se ha revocado a sí misma, o respecto a cuál sería el resultado si este tribunal nuevamente se revocara y retornara a la doctrina del

caso de Soto Gras. Si el disponiéndose contenido en el artículo 10 de una "Ley para autorizar demandas contra El Pueblo de Puerto Rico," aprobada el 13 de abril de 1916 (Leyes de ese año, pág. 155), y enmendada en 1928 (Leyes de ese año, pág. 131), puede tener o no alguna importancia sobre la cuestión en lo que respecta a la posibilidad, no importa cuán remota, de otra revocación y reversión, es también algo que no es necesario considerar por ahora. Véase, sin embargo, *Saurí & Subirá* v. *Sepúlveda,* 25 D.P.R. 242, y *Jiménez* v. *Domenech,* 80 Fed. (2d) 767.

La decisión de la corte en el caso de *Soto Gras* v. *Domenech,* supra, hasta que fué revocada, era obligatoria para las cortes de distrito y municipales; o, por lo menos, probablemente hubiera sido considerada por esas cortes como obligatoria para ellas. Véanse *Sojo* v. *Registrador,* 35 D.P.R. 855 y *Ochoa* v. *Manzano,* 24 D.P.R. 843. Si el presente recurso se hubiera iniciado en la corte municipal, con toda probabilidad hubiera sido desestimado por falta de jurisdicción, bien por la corte municipal misma o en apelación por la de distrito. Eliminando cualquier cuestión de prescripción, no tenemos razón alguna para creer, que el resultado final del litigio sería distinto si se requiriera ahora a la demandante que instruyera una nueva demanda en la corte municipal. La revocación de la sentencia equivaldría a una crueldad y a una injusticia a la demandante sin ningún provecho justo para el demandado. Luego de tal revocación, parecería poco ingenuo decir:

". . . El cuadro presentado por el litigante perplejo que es inducido a entablar un recurso basado en la falsa luz arrojada por una decisión, tan sólo para encontrarse con la ruina cuando se extinga esa luz y la decisión es revocada, es en gran parte fantasía de cerebros excitados."

*Debe confirmarse la sentencia de la corte de distrito.*

Los Jueces Sres. Presidente Del Toro y Asociado De Jesús no intervinieron.